UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

First Financial Security, Inc.,
a Delaware Corporation,

    Plaintiff,

v.

Gilles Moua, an individual,
and Mai Lee, an individual,
and DOES 1-100,

    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-1843(MJD/SER)

_____

## I.    Introduction

The above-entitled matter comes before the Court on Plaintiff First Financial Security, Inc.'s ("FFS") objections to the Report and Recommendation of Magistrate Judge Steven E. Rau dated June 24, 2014. Plaintiff objects to that portion of the Report and Recommendation in which the Magistrate Judge found that Plaintiff had not demonstrated irreparable harm warranting injunctive relief.

Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b). Based on that review, the Court

1

will adopt the factual findings[1] of the Magistrate Judge and his conclusions with respect to choice of law, and the likelihood of success on the merits of FFS's claims for breach of contract. For the reasons stated herein, the Court will not adopt the conclusion of the Magistrate Judge that FFS failed to demonstrate irreparable injury warranting the requested injunctive relief.

## II. Background

Briefly, FFS is a life insurance brokerage agency. Defendant Gilles Moua was an independent sales contractor for FFS and its predecessor Global Group Financial ("GGF") from 2003 until his resignation on May 10, 2014. In 2005, Moua was promoted to Executive Field Chairman ("EFC") and as of May 2013, he was FFS's highest paid EFC. Prior to his resignation, there were 14,700 sales contractors[2] on his team, of which 1,404 were licensed. Defendant Mai Lee lives with Moua, and was also a licensed sales contractor for FFS until her resignation on May 10, 2014.

---

[1] With one exception, as discussed below.

[2] The Magistrate Judge found that Moua's sales team included only the licensed sales contractors. (Report and Recommendation at 11.) In support of its objections to the Report and Recommendation, FFS submitted additional evidence indicating that Moua's former team included 14,700 contractors, of which 1,404 were licensed, and that currently, 13,300 contractors in Moua's former team remain at FFS, of which 996 are licensed. (Supp. Jones Decl. ¶ 3.)

FFS asserts that on May 10, 2014, Moua and Lee held a meeting at their home and invited key members of Moua's FFS sales team. FFS asserts that at this meeting, Defendants encouraged team members to terminate their relationship with FFS and work for Defendants at Freedom Equity Group ("FEG"), a competitor of FFS. Later that day, Moua and Lee submitted their resignations to FFS. Within a few hours, FFS asserts it received numerous resignations from members of Moua and Lee's sales team. Additional resignations were received by FFS in the following days. By May 22, 2014, FFS received over 1,300 resignations. By June 4, 2014, FFS also received 74 Notices of Cancellations of applications associated with the resigning sales team. FFS also received notices of chargebacks from insurance companies; some of which are based on the aforementioned application cancellations and others are based on a customer's failure to pay. A chargeback based on failure to pay requires FFS to repay commissions to the carrier. FFS then passes the chargeback to the sales contractor, who is then required to repay FFS.

Based on the above, FFS brought this action asserting claims of breach of contract and misappropriation of trade secrets. FFS moves for temporary injunctive relief from this Court to prevent Defendants from using or disclosing

confidential information of FFS and from soliciting, recruiting, inducing or otherwise engaging any FFS sales contractors to terminate their relationship with FFS to become associated with FEG or any other FFS competitor. FFS also seeks to enjoin Defendants from working with FFS customers.

FFS asserts it will suffer irreparable harm if its confidential contractor lists are used or disclosed. In support, FFS asserts it spent significant time and money to build and organize its sales force, and that divulging the contractor lists is the equivalent of handing a competitor an entire team of people neatly packaged to sell competing products. It is FFS's position that injunctive relief is necessary to protect FFS's confidential customer and contractor lists and because there is no way to reassemble the team that Defendant Moua has appropriated if FFS must wait for this lawsuit to proceed.

This Court referred the motion for injunctive relief to the assigned Magistrate Judge for a Report and Recommendation.

### III. Report and Recommendation

In his Report and Recommendation, the Magistrate Judge found that it is likely FFS will succeed on its claims of breach of contract as FFS produced evidence that Defendants may have induced FFS contractors to resign from FFS

to work for Moua at FEG in violation of Section C(3) of the Sales Contractor Agreement ("Agreement"). (Report and Recommendation at 9.) In addition, the Magistrate Judge found that FFS had shown that Defendants refused to return confidential information in the form of contractor lists, customer lists and customer information in violation of Section C(4) of the Agreement. (Id.)

In response to FFS's claim that it will suffer irreparable harm, the Magistrate Judge found that while money may not recreate a trained sales force, FFS had not demonstrated that Defendants continued to induce other FFS sales contractors from terminating their affiliation with FFS after May 22, 2014 to work for Defendants at FEG. (Id. at 11.) Instead, the Magistrate Judge found that

> [o]ver 1,300 out of 1,404 members of Moua's former sales team already resigned. These resignations took place during a finite period of time: between May 10, 2014, and May 22, 2014. Although FFS filed its Motion for TRO on June 10, 2014, FFS does not describe any resignations occurring after May 22, 2014. This indicates that, to the extent FFS seeks a TRO enjoining Defendants from soliciting FFS contractors or using sales contractor lists, there is no longer a current threat for the Court to prevent by issuing a TRO.

(Id.)

The Magistrate Judge also rejected FFS's claim that damages would be extremely difficult to calculate, based on the fact that FFS had offered several methods to calculate damages, referring to FFS estimates that Moua's former

5

team is responsible for $104,000 in chargebacks and that Moua's team represented 42% of FFS's 2013 commission income of $25,500,000. (Id. at 12.)

The Magistrate Judge further found that FFS had failed to demonstrate that Defendants would be unable to compensate FFS for its damages, noting that FFS had presented no evidence as to Defendants' financial resources. (Id.)

Finally, the Magistrate Judge acknowledged that the parties had agreed that damages would be an insufficient remedy. (Jones Decl. Ex. 1 (Agreement at Section C(7).) Despite this provision in the Agreement, the Magistrate Judge concluded that "FFS had not demonstrated that a TRO would prevent a future harm or that money damages are inadequate." (Report and Recommendation at 14.)

    **A.    Standard for Preliminary Injunctive Relief**

The law is well settled that in order to obtain preliminary injunctive relief, a plaintiff must show a likelihood of irreparable harm in the absence of the injunction. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Court also considers the balance between such harm and the injury that granting the injunction will inflict on other parties, Plaintiff's likelihood of success on the merits, and the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109,

114 (8th Cir. 1981) (en banc).

### B.     Irreparable Harm

This factor requires a party seeking preliminary injunctive relief to "show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Util. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . . Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [petitioner]'s business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986).

Courts may infer irreparable harm when a former employee breaches an enforceable restrictive covenant. Medtronic v. Gibbons, 527 F. Supp. 1085, 1090-91 (D. Minn. 1981); Thermorama, Inc. v. Buckwold, 125 N.W.2d 844, 845 (Minn. 1964). In addition, Minnesota courts have found that injunctive relief is appropriate to prevent irreparable injury from wrongful use of confidential information. Saliterman v. Finney, 361 N.W.2d 175, 179 (Minn. Ct. App. 1985).

FFS objects to the Magistrate Judge's finding that FFS failed to demonstrate that Defendants continued to induce FFS sales contractors in violation of the

Agreement. In support, FFS presented evidence that after May 22, 2014, FFS received an additional 71 resignations of contractors from Defendant Moua's former sales team, for a total of 1,412 since May 10, 2014. (Supp. Jones Decl. ¶ 2.) In addition, FFS asserts Defendants are actively recruiting the remaining members of Moua's team, based on communications from the remaining contractors. (Id. ¶ 3.) FFS further noted that the Magistrate found that "over 1,300 out of 1,404 members of Moua's former sales team had already resigned." (Report at 11.) Moua's former team actually totaled 14,700, of which 1,404 were licensed. (Supp. Jones Decl. ¶ 3.) FFS asserts that approximately 13,300 sales contractors in Moua's team remain at FFS, of which 996 are licensed. (Id.)

FFS further asserts that the Magistrate Judge erroneously focused on the number of resignations, rather than the significance of each resignation, which is the resulting harm of future sales lost over time. In addition, the improper inducement of FFS sales contractors represents unfair competition.

FFS also objects to the Magistrate Judge's characterization of the damages in this case. At issue here are life insurance policies which are often renewed for the life of the insured. As a result, it is nearly impossible to calculate damages related to lost future sales. Accordingly, FFS objects to the Magistrate Judge's

determination that damages will not be difficult to calculate, as he focused only on the evidence presented as to chargebacks and the percentage of commission income earned by Moua's former team. FFS argues the fact that it can look back one year and inform the Court of the Moua team's contribution has no bearing on a future damages calculation. It is FFS's position that damages will increase over time. By contrast, if injunctive relief is granted, the damages will be cut off pending resolution of this case.

     Based on the record before it, the Court finds that FFS has sufficiently demonstrated that it will suffer irreparable harm if the requested injunctive relief is not granted. FFS has sufficiently demonstrated injunctive relief is necessary to prevent Defendants from continuing to solicit sales contractors on Defendant Moua's former sales team to leave FFS and join him at FEG. Plaintiff has demonstrated that as of May 22, 2014, over 1,300 members of Defendants' sales team had resigned, and that since May 22, 2014, FFS has received an additional 71 resignations, for a total of 1,412. To put this in perspective, FFS has demonstrated that from 2003 through April 2014, only 732 sales contractors had resigned from FFS. (Jones Decl. ¶ 58.) In addition, given the fact that over 13,000 of Moua's former sales team remain at FFS, FFS has demonstrated that injunctive relief is

required to prevent Defendants from further inducing their former sales team from joining them at FEG.

The record also sufficiently demonstrates that Defendants have refused to return confidential information in violation of the sales contractor agreement in the form of contractor lists, customer lists and customer information in violation of Section C(4) of the Agreement. FFS is thus entitled to an inference of irreparable harm. See Modern Controls, Inc. v. Andreadakis, 578 F.2d 1264, 1270 (8th Cir. 1978) (recognizing that disclosure of confidential information may be disclosed in ways more subtle than outright disclosure to a third party, such as the inability of a former employee to prevent his knowledge of his former employer's confidential methods or data from showing up in his work). Because Defendants have not responded to this motion, such inference has not been rebutted.

In addition, the Court finds that FFS has demonstrated that money damages, in part, will be difficult to calculate, as part of the damages claim will be based on lost commissions for on life insurance renewals.

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for a Temporary Restraining Order [Doc. No. 7] is

GRANTED;

2. Each Defendant must cease all use of FFS's confidential trade secrets, including FFS sales contractor lists and customer lists;

3. Each Defendant must cease soliciting, recruiting, inducing or otherwise engaging any FFS contractors to leave FFS to work in connection with, or in any way be associated with FEG or any other FFS competitor;

4. Each Defendant is enjoined from inducing FFS sales contractors from breaching the SC Agreement;

5. Each Defendant, and both of them, is enjoined from working with FFS customers;

6. The Court hereby sets a preliminary injunction hearing for August 12, 2014, at 9:00 a.m. in Courtroom 15E, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, at which time this Court will determine whether an injunction should remain in force for the duration of this Action;

7. No bond is required at this time; and

    8.    FFS is to provide notice of this Order.

Date: July 29, 2014                                      s/ Michael J. Davis
                                                                              Michael J. Davis
                                                                              Chief Judge
                                                                              United States District Court