UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

FIRST FINANCIAL SECURITY, INC., a             Case No. 14-CV-1843 (PJS/SER)
Delaware corporation,

                    Plaintiff,

v.                                                          ORDER

MAI LEE; GILLES MOUA; and DOES 1-
100,

                    Defendants.

Clifford S. Davidson, David D. VanSpeybroeck, and Timothy A. Solomon,
SUSSMAN SHANK LLP; Lousene M. Hoppe and Chelsea Brennan DesAutels,
FREDRIKSON & BYRON, P.A., for plaintiff.

Kenneth D. Sisco, SISCO & NARAMORE; Chad A. Snyder, RUBRIC LEGAL
LLC, for defendants.

This matter is before the Court on defendants' objection to the January 14, 2016

Report and Recommendation ("R&R") of Magistrate Judge Steven E. Rau.[1]  In the R&R,

Judge Rau recommends imposing various sanctions against defendants and their

former counsel for violating their discovery obligations.  The Court has conducted a de

novo review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).[2]  Based on that review, the

---

[1]Judge Rau issued an amended R&R on January 19 to correct a minor
typographical error.  ECF Nos. 265, 266.

[2]Plaintiff contends that the Court should apply the deferential standard of review
(continued...)

Court adopts the R&R in substantial part.  Specifically, the Court adopts the

recommendation to impose monetary sanctions and give adverse-inference instructions.

For now, however, the Court will not adopt the recommendation to strike defendants'

affirmative defenses, although the Court may reconsider its decision based on the

evidence introduced at trial.

## I.  BACKGROUND[3]

Plaintiff First Financial Security, Inc. ("FFS") is an insurance broker that uses a

multi-level marketing system to sell life-insurance policies.  FFS sells policies through

independent contractors, who are organized into teams.  Each team is structured as a

hierarchy led by an Executive Field Chairman.  The contractors who fall under any

particular contractor within the hierarchy are referred to as that contractor's "downline"

team.  A contractor is compensated not only for policies that he or she sells, but also for

policies that are sold by members of his or her downline team.

------

[2](...continued)
applicable to non-dispositive orders under 28 U.S.C. § 636(b)(1)(A).  Because of the
potentially dispositive nature of the requested sanctions, however, Judge Rau issued an
R&R rather than an order.  The Court reviews the R&R de novo.

[3]This factual summary is drawn from the allegations in FFS's complaint and the
factual findings made in the preliminary-injunction order issued by then-Chief
Judge Michael J. Davis.  *See* ECF No. 80.  Judge Davis recused from this case in
October 2015 (shortly after taking senior status), ECF No. 245, and the case was
eventually reassigned to the undersigned, ECF No. 255.

All FFS contractors are required to enter into a Sales Contractor Agreement. Under these agreements, contractors are prohibited from inducing other contractors to terminate their affiliation with FFS.  Contractors are also prohibited from inducing FFS customers to terminate their policies or reduce coverage.

Defendant Gilles Moua was the Executive Field Chairman for one of FFS's seven primary sales teams until he resigned on May 10, 2014.  Before he resigned, Moua had approximately 14,700 sales contractors on his team, of which 1,404 were licensed. Defendant Mai Lee, who lives with Moua, was also a licensed sales contractor for FFS. Like Moua, Lee resigned from FFS on May 10, 2014.  Following their resignations, Moua and Lee began selling policies for Freedom Equity Group ("FEG"), a competitor of FFS's.

FFS brought this action against Moua and Lee, alleging that they breached the Sales Contractor Agreement in several ways, including by recruiting members of Moua's downline team to join FEG.  Much of FFS's case depends on communications leading up to and following a crucial meeting that took place at Moua and Lee's home on May 10, 2014 (which, again, is the date that Moua and Lee resigned from FFS). Starting on that date and continuing over the next several weeks, hundreds of members of Moua's team resigned from FFS; by May 22, over 1,300 contractors on Moua's team had resigned.  FFS alleges that the timing of these resignations was not coincidental, but

instead reflected an effort by Moua and Lee to induce the contractors to follow Moua to FEG.

FFS sought discovery of Moua's and Lee's written communications with the team members and others, but, as detailed more fully in the R&R, FFS has been almost entirely stymied in its efforts to obtain any texts or emails that were sent or received around or after the time of the May 10 meeting.  This is so despite the fact that Judge Rau issued an order in February 2015 compelling Moua and Lee to provide such discovery.  ECF No. 113.

FFS eventually sought sanctions against Moua and Lee on two grounds: for spoliation of text messages that were deleted or otherwise lost from their phones and for failure to comply with their discovery obligations, including Judge Rau's discovery orders.  Judge Rau declined to recommend spoliation sanctions because he found that defendants' destruction of text messages, although possibly intentional, was not in bad faith.  Judge Rau also found, however, that defendants willfully failed to comply with his February 2015 discovery order, and Judge Rau recommends that the Court impose the following sanctions for that violation pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i) and (iii):

> (1)    Striking defendants' affirmative defenses of defamation and constructive termination.

(2)     Instructing the jury that defendants did not fully respond to discovery as ordered by the Court and that, as a result, the jury may, but is not required to, infer the following facts:

- Defendants instructed their downline team to come to defendants' home on May 10, 2014.

- Defendants told their main lieutenants to instruct others to come to defendants' home on May 10, 2014.

- Defendants communicated with FEG regarding their impending departure from FFS, in advance of resigning from FFS.

- Defendants recruited FFS sales contractors to join FEG.

Judge Rau recommends permitting defendants to attempt to rebut these inferences with evidence that explains why they failed to produce documents relevant to these matters during discovery.  In addition to these sanctions, Judge Rau recommends requiring both defendants and Jon Drucker (their former counsel) to pay the attorney's fees and costs that FFS incurred in bringing two motions—its first motion for sanctions and a later omnibus motion for sanctions.[4]

Defendants object to these recommendations.  They do not take issue with the legal standards that Judge Rau applied to determine whether sanctions should be imposed under Fed. R. Civ. P. 37(b)(2)(A).  In particular, they do not dispute that, under

---

[4]Judge Rau also recommends sanctioning Drucker personally for his failure to comply with a separate discovery order concerning third-party subpoenas.  (Drucker represented the third parties.)  As discussed below, Drucker filed his own objection to the R&R, but that objection is not properly before the Court because it is untimely.

Rule 37, a court may strike defenses and give adverse-inference instructions as a sanction for a willful violation of a discovery order.  Nor do they take issue with Judge Rau's description of their conduct during discovery.  Instead, defendants take issue only with some of Judge Rau's conclusions.

Specifically, defendants contend that (1) even if their former counsel acted willfully, their own conduct was not willful; (2) FFS was not prejudiced by the missing discovery; and (3) defendants have already produced all documents relevant to their affirmative defenses.  Defendants have also recently filed a motion to supplement their objection, asking that the Court consider additional materials relevant to their affirmative defenses.  The Court considers each of these matters in turn.

## II.  ANALYSIS

### A.  Willfulness

Defendants first argue that they did not willfully violate the February 2015 discovery order and that their former counsel, Jon Drucker, is to blame.  As FFS correctly points out, however, sanctions under Fed. R. Civ. P. 37(b)(2)(A) may be imposed against a party on the basis of counsel's misconduct even without a finding that the party himself or herself acted willfully or in bad faith.[5]  A party is responsible

---

[5] *See Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir. 2009) (affirming dismissal with prejudice despite the fact that "[t]he record does not contain any evidence that Siems himself contributed in any way to the dilatory actions of his

(continued...)

for the conduct of his or her attorney—and, if the consequences of an attorney's

misconduct must be borne by someone, those consequences should be borne by the

party who hired the attorney rather than by that party's opponent.  Setting that aside,

there is evidence in the record that defendants do, in fact, bear some personal

responsibility for the multiple delays and failures to comply with Judge Rau's

February 2015 discovery order.

As Judge Rau detailed in the R&R, defendants initially responded to the

February 2015 discovery order by producing some emails.  ECF No. 151 at 3-4; ECF

No. 136.  Because FFS's requests for production sought more than just emails, FFS

believed that this production was not fully responsive.  FFS then moved for sanctions.

ECF No. 133.  While that motion was pending, FFS obtained emails from non-party

---

[5](...continued)
counsel"); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) ("It was
within the district court's discretion to impose the dismissal and default judgment
sanctions without a finding that Larson acted in bad faith or was herself guilty of willful
misconduct."); *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118-19 (8th Cir.
1997) ("While it may seem harsh to make defendants answer for their attorney's
behavior, any other result would punish [plaintiff] for the inaction of her opponents'
lawyer."); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993) (fact that discovery
violations were the sole fault of defendant's prior counsel did not preclude the entry of
default judgment against defendant); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th
Cir. 1992) ("Although the sanction was imposed against the plaintiff, it is of no
consequence that the discovery abuse perpetrated was by counsel rather than the
plaintiff-client."); *Denton v. Mr. Swiss of Mo., Inc.*, 564 F.2d 236, 240 (8th Cir. 1977)
("Appellants argue that . . . a district court may never impose the sanction of dismissal
unless the parties themselves have willfully or in bad faith failed to make discovery or
to comply with orders of the court.  We do not agree.").

Michael Jones, among which were emails between Jones and defendants that were responsive to FFS's document requests but that defendants had not produced. ECF No. 162 ¶ 2 & Ex. 1; ECF No. 161 at 2. The emails produced by Jones included emails between defendants and members of Moua's downline team—emails that had been forwarded to Jones. ECF No. 162 Ex. 1 at 1, 13-14.

 Defendants did not explain why they failed to produce these emails, which were clearly responsive and which should have been easy to find and produce. Instead, defendants simply argued that FFS had failed to meet and confer before moving for sanctions. ECF No. 163.

Shortly after that, defendants produced about 90 more emails. Not only should those emails have been produced much earlier, but, contrary to the requests for production and Fed. R. Civ. P. 34(b)(2)(E), defendants failed to produce these emails in their native format. ECF No. 157.

Defendants then asserted, in an April 2015 supplemental response to the requests for production, that they did not have any more responsive documents in their possession. ECF No. 162 Ex. 3. Each defendant personally signed an attached statement verifying that this was true. ECF No. 162 Ex. 3 at 12.

It was not true. A month later, in May 2015, defendants produced additional text messages. ECF No. 201 ¶ 2 & Ex. 1. In a cover email to Drucker that was forwarded to

FFS, Lee asserted that this time, the defendants had produced all responsive text messages in their possession.  ECF No. 201 Ex. 1.

This was also not true.  In June, defendants produced yet more text messages. ECF No. 201 ¶ 10 & Ex. 9.  Drucker did not explain the late production and, when asked how the texts were obtained, he responded only that he thought they were from an iPad or an iPhone.  ECF No. 201 Ex. 9.  Drucker also never responded to FFS's query concerning how the text messages were exported.  ECF No. 201 ¶ 10.

Notably, as detailed more fully in the R&R, there is a suspicious dearth of text messages from June through October of 2014.  Phone records show that defendants sent or received *thousands* of text messages during this period.  ECF No. 241 at 21-22. Defendants' account of their accidental destruction of text messages—specifically, Moua's claim that his son innocently cleaned out excess files from Moua's phone in May 2014, and Lee's claim that she inadvertently lost texts when she replaced her phone in August 2014—does not fully explain this gap, even if that account is true.

This course of events provides strong circumstantial evidence that defendants are concealing documents in violation of Judge Rau's February 2015 order.[6]  The cryptic responses and lack of clear explanation from Drucker regarding the late, piecemeal

---

[6]To clarify, the Court is not referring to the texts that were spoliated in May 2014 and August 2014 and for which Judge Rau declined to recommend sanctions.  The Court is referring to text messages and emails that were sent or received by Moua after May 2014 and by Lee after August 2014.

production of text messages and emails indicate that those materials almost certainly

came from defendants and that Drucker (or defendants) wanted to obscure the reasons

for the late production.  In April 2015, defendants both signed a statement personally

verifying that they had produced all responsive documents.  After producing yet more

messages in May, defendants again represented that those were all of the messages that

they had.  Defendants must have known that these statements were not true, since the

defendants were at the time in possession of additional texts.  This conclusion is

reinforced by defendants' failure to explain the absence of texts from

June through October 2014, as well as defendants' refusal to accept FFS's offer to pay a

third party to extract text messages from their phones.  *See* ECF No. 157 at 2.

This conclusion is also reinforced by other misrepresentations in the record.  For

example, both defendants asserted, under penalty of perjury, that they had personal

knowledge that FFS had obtained a year's worth of their phone records from Verizon

via subpoena.[7]  ECF No. 212 ¶ 8; ECF No. 213 ¶ 6.  Like so much of what defendants

have said, this was not true; there was no such subpoena and FFS had not obtained a

year's worth of phone records.  ECF No. 241 at 34-35 (Drucker admitting that there was

---

[7]Notably, Drucker made the same misrepresentation.  ECF No. 215 ¶ 8.  Even if, as Drucker claims, this was the result of some kind of miscommunication or misunderstanding, Drucker acted recklessly in making such an assertion under penalty of perjury.  Given the troubled history of discovery up to that point, the Court would have expected a lawyer in Drucker's position to be absolutely certain that his representations to the Court were true.

no Verizon subpoena).  Even if defendants and their counsel were mistaken about the

subpoena and the records, defendants had to know that they did not have *personal*

*knowledge* of the non-existent subpoena and the non-existent production of phone

records.  And yet they swore that they had such personal knowledge.

    The Court gives little credence to defendants' claims that their lack of

sophistication and difficulty with the English language impeded their ability to

understand or comply with their discovery obligations.  Defendants both testified at

length at the hearing on FFS's motion for a preliminary injunction without the

assistance of an interpreter.  They both also worked for FFS for many years and enjoyed

substantial financial success.  Moua was the head of a huge multilevel-marketing group,

and Lee handled various complex administrative tasks, including making travel

reservations, purchasing sales prizes, and organizing sales conventions.  The Court does

not credit the suggestion that they would not understand a simple instruction to

preserve and produce text messages, emails, and other documents.

    In addition, the record is replete with evidence that defendants are well versed in

the use of text messages.  Smartphones may be complicated pieces of technology, but

using a basic text-messaging application is simple.  It defies belief that experienced

users such as defendants would have trouble locating text messages on their own

phones (or asking someone to help them do so).

Defendants argue that a finding of willfulness is inconsistent with Judge Rau's findings regarding their lack of bad faith. But these are different findings that relate to different conduct that occurred at different times. Judge Rau found that defendants did not act in bad faith when they caused the destruction of text messages in May 2014 and August 2014, but he found that defendants did act willfully in failing to comply with the discovery order that he issued in February 2015. There is nothing inconsistent about these findings. In addition, to the extent that there may be a distinction between acting willfully and acting in bad faith, the Court has no trouble concluding that, in violating the February 2015 order, defendants and their counsel acted *both* willfully *and* in bad faith for the purpose of depriving FFS of relevant evidence.

## B.  Lack of Prejudice

Defendants next argue that FFS is not prejudiced because defendants deny that they are liable and, "*[i]f* Defendant's denials have merit," ECF No. 267 at 3 (emphasis added), defendants themselves are prejudiced because the missing texts and emails could only help to exonerate them. Needless to say, if such an argument were sufficient to defeat discovery sanctions, then no party could ever be sanctioned, even for the most egregious discovery abuses. That is plainly not the law. The parties sharply dispute how the May 10, 2014 meeting came about, what happened during that meeting, and why over 1,300 members of Moua's downline team resigned shortly after that meeting.

FFS's lack of access to direct, highly probative evidence regarding these matters is obviously prejudicial.[8]

Defendants also point out that, if damning texts and emails existed, FFS would likely be able to recover them from third parties. But the difficulty of obtaining texts and emails from over a thousand former affiliates is self-evident. FFS has the right to learn from *Moua and Lee* what they said to others during the crucial period; FFS is not required to seek that information through the far more onerous and expensive process of serving subpoenas on over a thousand members of Moua's downline team. Moreover, the strength of FFS's case depends on its ability to paint a full picture of defendants' conduct. The possibility that FFS may be able to obtain some scattershot texts and emails from third parties cannot compensate for its inability to obtain a complete record of defendants' written communications from defendants themselves.

### C. *Affirmative Defenses*

In its request for production, FFS asked for documents specifically relating to defendants' affirmative defenses of constructive termination and defamation. ECF No. 104 Ex. D ¶¶ 34, 43. In their supplemental response, defendants asserted that they have produced all such documents. ECF No. 162 Ex. 3 ¶¶ 34, 43. After noting this

---

[8]Again, the Court is referring only to texts and other materials that defendants failed to produce in response to the February 2015 discovery order; the Court is not referring to the texts that were spoliated in May 2014 and August 2014 and for which Judge Rau declined to recommend sanctions.

response, Judge Rau recommended striking these defenses based on defendants' refusal to comply with their discovery obligations.  ECF No. 266 at 32.

In discovery disputes such as this, the Court often cannot know for certain whether a party is lying when it represents that it has produced all discoverable materials in its possession.  Almost always, the Court must rely on circumstantial evidence.  With respect to the missing texts and emails, there is strong circumstantial evidence from which the Court can infer that defendants are withholding discoverable materials.  By contrast, with respect to documents relating to defendants' affirmative defenses, the circumstantial evidence is weaker.

No one could blame Judge Rau for suspecting—based on defendants' pattern of dishonesty and refusing to obey discovery orders—that defendants have not produced all documents concerning their affirmative defenses.  But this Court is reluctant to impose a such a serious sanction on the basis of nothing more than a suspicion that, because defendants have violated a discovery order in some ways, they must have violated the order in other ways.

The Court has been unable to find any description of the documents that FFS expected to receive in response to these requests or any specific reason why FFS believes that responsive documents exist and were not produced.  It is not clear to the Court that responsive documents do, in fact, exist.  For example, the constructive-

termination defense appears to be based on an allegation that, after Moua and Lee resigned, FFS denied members of Moua's downline team access to FFS's computer system.  It would not be surprising if Moua and Lee would have few if any documents related to this defense; presumably, such documents would be in the possession of FFS and the team members who were denied access to FFS's system.  Perhaps some of the texts and emails that defendants have failed to produce are also relevant to their affirmative defenses, but Judge Rau did not appear to base his recommendation concerning the affirmative defenses on the failure to produce these texts and emails, nor has FFS defended that recommendation on that basis.

Given this lack of clarity, the Court will not now adopt the recommendation that it strike these affirmative defenses.  However, if, at trial, FFS is able to establish that responsive documents existed and were not produced—and that, as a result, FFS is prejudiced in its ability to counter these affirmative defenses—the Court will reconsider its ruling.

In any event, the Court will not permit defendants to introduce into evidence any discoverable materials that they failed to produce in discovery.  In light of the Court's decision not to strike these affirmative defenses, defendants' motion to supplement their objection with respect to these defenses is denied as moot.

### D.  Drucker's Objection

In addition to defendant's objection (which was filed by their current counsel),

defendants' former counsel (Jon Drucker) filed an objection dated February 22, 2016.

ECF No. 271.  Drucker's objection is untimely.[9]  *See* D. Minn. L.R. 72.2 (requiring a party

to file and serve objections within 14 days of being served with a copy of an order or

R&R); ECF No. 272 (amended R&R served on Drucker on January 19, 2016); *see also* ECF

No. 264 (original R&R served on Drucker on January 14, 2016, which Drucker

acknowledged the same day).

Drucker contends that did not receive "Plaintiff's filings in re the Report and

Recommendations" until February 19, 2016.  ECF No. 271 at 16.  He further contends

that, contrary to Judge Rau's instructions, he received those "filings" from defendants'

lead counsel rather than from defendants' local counsel.  *Id.*  Drucker does not explain

---

[9]After FFS filed a brief opposing Drucker's objection, Drucker filed a reply brief
and accompanying materials.  The local rules of this District do not permit an objecting
party to file a reply brief in support of an objection.  *See* D. Minn. L.R. 72.2 (permitting
an objection and a response).  The Court therefore will not consider Drucker's reply or
the accompanying materials.

The Court notes that, in these materials, Drucker attempts to blame the
untimeliness of his objection on defendants' local counsel, who (according to Drucker)
refused to file the objection on Drucker's behalf.  This latest story is of a piece with
Drucker's seemingly endless supply of excuses for failing to obey the orders and rules
of this Court.  To be clear:  Drucker alone is responsible for the timeliness of his filings.
Defendants' local counsel is not Drucker's lawyer and has no obligation to file anything
on his behalf.

the significance of these facts, but he seems to imply that they somehow render his objection timely.

Drucker is incorrect.  To begin with, Drucker's latter assertion is based on a faulty premise:  Judge Rau simply instructed defendants' current counsel to serve the R&R and related materials on Drucker; he did not distinguish between lead counsel and local counsel.  ECF No. 266 at 38-39.  More importantly, the fact that Drucker may not have been timely served with FFS's *response* to defendants' objection does not excuse the failure of Drucker to *object* to the R&R in a timely manner.  All objections were due 14 days after the R&R was served, a date that necessarily preceded the due date of FFS's response to such objections.  Drucker did not need—and was not entitled to wait for—FFS's *response* to defendants' objection before deciding whether to object himself. In short, whether or not Drucker timely received a copy of FFS's response to defendants' objection is irrelevant to the timeliness of Drucker's objection.  Because Drucker's objection is untimely, the Court will not consider it.[10]

_____

[10]Notably, Drucker's most prominent argument is that FFS failed to meet and confer pursuant to D. Minn. L.R. 7.1.  As a result, says Drucker, Judge Rau erred by ruling on the merits of FFS's motion for sanctions.  Drucker cites no authority for the proposition that a motion filed in violation of the meet-and-confer requirement must be denied.  Particularly in light of Drucker's long history of failing to respond in good faith to FFS's attempts to communicate with him, Judge Rau acted within his discretion in excusing FFS's failure to comply with the meet-and-confer requirement and ruling on the merits of the motion for sanctions.

Finally, the Court notes that, even if it were to consider Drucker's objection, it would not consider the arguments that he purports to make on behalf of his former clients.  Drucker no longer represents defendants, see ECF No. 256, and therefore he has no authority to make arguments on their behalf.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court SUSTAINS IN PART defendants' objection [ECF No. 267] and ADOPTS IN PART the R&R [ECF Nos. 263, 266].  IT IS HEREBY ORDERED THAT:

1.   Plaintiff's motion for sanctions [ECF No. 204] is GRANTED IN PART.

     a.   The motion is GRANTED as to plaintiff's request for adverse-inference instructions.  The Court will instruct the jury that defendants did not fully respond to discovery as ordered by the Court and that, as a result, the jury may, but is not required to, infer the following facts:

          i.   Defendants instructed their downline team to come to defendants' home on May 10, 2014.

          ii.  Defendants told their main lieutenants to instruct others to come to defendants' home on May 10, 2014.

       iii.     Defendants communicated with FEG regarding their impending departure from FFS in advance of resigning from FFS.

       iv.     Defendants recruited FFS sales contractors to join FEG.

   b.     The motion is GRANTED as to plaintiff's request for attorneys' fees and costs as follows:

       i.     Plaintiff's fees and costs incurred in bringing the first motion for sanctions and the omnibus motion for sanctions are assessed against attorney Jon Drucker and defendants, jointly and severally.

       ii.     Plaintiff's fees and costs incurred in bringing the second motion to compel and the second motion for sanctions are assessed against attorney Jon Drucker.

   c.     The motion is DENIED in all other respects.

2.     Defendants' motion to supplement their objection [ECF No. 270] is DENIED AS MOOT.

3.     The objection of the Law Office of Jon E. Drucker [ECF No. 271] is OVERRULED as untimely.

4.      This matter is remanded to Judge Rau for resolution of the amount of

attorney's fees and costs to which plaintiff is entitled in accordance with

the procedures outlined in the R&R.

5.      Defendants' current counsel are instructed to serve a copy of this order on

Jon Drucker and file proof of such service within three business days of

the date of this order.

Dated: March 8, 2016                          s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge